UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:13-CV-814-FL

| | |
|---|---|
| THE U.S. COURTS, JAILS, AND PRISONS COALITION, ERIC M. MCMILLIAN, and LINDA C. LIVERMAN, <br><br> Plaintiffs, <br> v. <br><br> R.L. PARKER, PAUL COUSINS, and DR. HUNT, <br><br> Defendants. | **MEMORANDUM & RECOMMENDATION** |

This cause comes before the Court upon the following matters:

(1) Plaintiff Linda Liverman's particularized application to proceed *in forma pauperis* (DE-6);

(2) Plaintiff Eric McMillian's application to proceed *in forma pauperis* (DE-8);

(3) Plaintiff McMillian's proposed amended complaint, in which he seeks to remove United States Courts, Jails and Prisons Coalition as a party (DE-10);

(4) Frivolity review of Plaintiffs' complaint pursuant to 28 U.S.C. § 1915;

(5) Plaintiffs' "Motion to Proceed *Pro Se* as an Indigent Party" (DE-11); and

(6) Plaintiffs' Motion to Appoint Counsel (DE-12).

Pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 72.3, these matters have been referred to the undersigned. For the following reasons, it is HEREBY RECOMMENDED that Plaintiff Liverman's claims be dismissed, and that Plaintiff McMillian's claims be dismissed in part and allowed to proceed in part.

I. **Plaintiffs' *In Forma Pauperis* Applications**

    A. **Plaintiff Linda Liverman**

On November 25, this Court entered an Order instructing Plaintiff Liverman to file a particularized application to proceed *in forma pauperis*. (DE-5). She has done so, and has demonstrated appropriate evidence of inability to pay the required court costs. (DE-6). Therefore it is RECOMMENDED that Plaintiff Liverman's application to proceed *in forma pauperis* (DE-6) be GRANTED.

    B. **Plaintiff Eric McMillian and the U.S. Courts, Jails, and Prisons Coalition**

In its prior order, this Court denied the *in forma pauperis* application filed by "the U.S. Courts, Jails, and Prisons Coalition," because only natural persons may qualify for *in forma pauperis* status. DE-5 at 1 (citing *Rowland v. California Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 196 (1993)). In response, Eric McMillian seeks to proceed *in forma pauperis* of his own accord and has amended the proposed complaint to substitute himself as Plaintiff.[1] DEs-8&10. The undersigned will construe the latter document as a motion to amend the original complaint. Because the complaint has not yet been served, Fed. R. Civ. P. 15(a)(1)(A), it is RECOMMENDED that Plaintiffs' motion to amend (DE-10) be GRANTED.[2] *See Goldman v. Kenworthy*, No. 5:10-ct-3222, 2011 WL 2669271, at *1 (E.D.N.C. Jul. 7, 2011). It is further RECOMMENDED that Plaintiff McMillian be allowed to pursue this matter in his own name, that he be added as a party, and that the U.S. Courts, Jails, and Prisons Coalition be dropped. *See* FED. R. CIV. P. 21.

---

[1] Plaintiff also "request[s] a valid explanation as to why the [Coalition] is not being allowed to proceed as indigent." DE-10 at 1. Plaintiff is referred to this Court's prior order, DE-5, at page 1.

[2] Plaintiff has neglected to attach the original exhibits to the proposed amended complaint. *See* DEs 1-3, 1-4, & 1-5. In the interest of efficiency, the undersigned has considered those exhibits during frivolity review.

As to Plaintiff McMillian's application to proceed *in forma pauperis*, he has demonstrated appropriate evidence of inability to pay the required court costs. Therefore it is RECOMMENDED that his application to proceed *in forma pauperis* (DE-8) be GRANTED.

Finally, because both Plaintiffs in this matter have been allowed to proceed *in forma pauperis*, it is RECOMMENDED that Plaintiffs' "Motion to Proceed *Pro Se* as an Indigent Party" (DE-11) be DENIED AS MOOT.

## II.  Frivolity Review

When a Plaintiff has demonstrated appropriate evidence of inability to pay the required court costs, pursuant to 28 U.S.C. § 1915(e)(2), the Court must conduct a frivolity review, and dismiss an action determined to be frivolous or malicious, or which fails to state a claim upon which relief can be granted. *Id.*; *see Cochran v. Morris*, 73 F.3d 1310, 1315-16 (4th Cir. 1996) (discussing *sua sponte* dismissal under predecessor statute, 28 U.S.C. § 1915(d)). A case is frivolous if it lacks an arguable basis in either law or fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. Section 1915 permits federal courts "to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Denton v. Hernandez*, 504 U.S. 25, 32 (1992) (citing *Neitzke*, 490 U.S. at 327). Examples of such claims include those "describing fantastic or delusional scenarios," manifestly "fanciful," or so wholly irrational as to lack any basis in fact. *Id.* at 32-33 (citing *Neitzke*, 490 U.S. at 328).

The standard used to evaluate the sufficiency of the pleading is flexible, and a *pro se* complaint, however inartfully pled, is held to less stringent standards than formal pleadings drafted by attorneys. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). But this less stringent standard does not undermine the "requirement that a pleading contain 'more than labels

and conclusions.'" *Giarratano v. Johnson*, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-52 (2009); *Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010).

Plaintiffs' complaint lacks clarity.[3] Nonetheless, the most prominent allegations involve: (1) alleged misconduct by Detective R.L. Parker in violation of 42 U.S.C. § 1983 ("Section 1983"); (2) a conspiracy in violation of 42 U.S.C. § 1985, wherein Detective R. L. Parker arrested Mr. McMillian at the behest of North Carolina State University ("N.C. State") and its admissions officers, in an attempt to scuttle Mr. McMillian's attempt at readmission to the University, and (3) N.C. State's and its admissions officers' alleged violation of Mr. McMillian's rights by denying him re-admission because of his criminal record. These claims are considered separately below.

### A. Plaintiff Liverman's Claims

Ms. Liverman's claims arise solely against Detective Parker.[4] She alleges that Detective Parker both misrepresented and withheld information when she was obtaining a protective order against Mr. McMillian and that she was "persuaded" by the police to change an address on the motion for protective order, apparently to "make the plaintiff look as if he was a vagabond." DE-10 at 2-3, 5, 9-10. Ms. Liverman also seeks compensatory damages from Detective Parker

---

[3] Plaintiff McMillian is a prolific filer in this district, bringing at least 22 lawsuits against, *inter alios*, the prosecutor and state public defender involved in a state criminal charge against him, Nos. 5:09-ct-3141 & 5:09-ct-3144, officials at the state prison, No. 5:11-ct-3183, and members of the Raleigh Police Department, No 5:12-cv-162. Several of Mr. McMillian's cases have been dismissed as frivolous. *See* 5:11-cv-67-BO (DE-5) (Mar. 15, 2011), *aff'd* No. 11-1417 (4th Cir. Aug. 1, 2011); No. 5:11-ct-3234-BO (DE-6) (May 18, 2012); No. 5:10-cv-359-D (DE-7) (Nov. 3, 2010); No. 5:10-ct-3036-BO (DE-8) (Nov. 1, 2011); No. 5:09-ct-3141-D (DE-8) (Aug. 17, 2010); No. 5:08-cv-586-FL (DE-4) (May 12, 2009).

[4] Plaintiffs' prayer for relief seeks damages from the "Raleigh Police Department," in addition to Detective Parker, but because the allegations detailed in the complaint all specifically name Detective Parker, it is assumed that the Raleigh Police Department is not named as a separate defendant. Even if it were named, such a claim would be frivolous, because the Police Department lacks the capacity to be sued. *Jones v. City of Greensboro*, 51 N.C. App. 571, 593 (1981); *see also McMillian v. City of Raleigh et al.*, No. 5:11-cv-67-BO, DE-5 at 5 (Mar. 15, 2011) (dismissing claim against Raleigh Police Department as frivolous).

"for staging a 'false arrest'. . . under 'false pretense' as officers were looking for McMillian on a robbery charge and not because Ms. Liverman called them to the residence and alerted them McMillian was actually in the home." DE-10 at 10.

Plaintiffs allege that Detective Parker's actions violated 42 U.S.C. § 1983. Although not a source of substantive rights itself, section 1983 creates a species of tort liability and provides "a method for vindicating federal rights elsewhere conferred." *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979). To state a claim under section 1983, a plaintiff must allege sufficient facts indicating that she was deprived of rights guaranteed by the Constitution or laws of the United States, and that this deprivation resulted from conduct committed by a "person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 49 (1988). Here, Ms. Liverman has nowhere alleged that *she* was deprived of any rights "guaranteed by the Constitution or laws of the United States"; the only harm alleged is Mr. McMillian's.[5] A complaint must contain factual allegations, otherwise the claim is nothing more than a bare assertion and frivolous. *White v. White*, 886 F.2d 721, 723 (4th Cir. 1989) (stating minimum level of factual support required). Here, Ms. Liverman's allegations lack both legal basis and factual support, and it is therefore RECOMMENDED that her claims be dismissed as frivolous. *Neitzke*, 490 U.S. at 325.

### B. Plaintiff McMillian's § 1983 Claims against Detective Parker

As to Mr. McMillian's claims against Detective Parker, the complaint details convoluted allegations pertaining to events occurring between January 13 and January 16, 2011. In essence, Mr. McMillian alleges that Detective Parker's actions in searching Ms. Liverman's Parkland

---

[5] In their complaint, DE-10 at 4, Plaintiffs rely upon the January 2011 Motion for Domestic Violence Protective Order and the Ex Parte Domestic Violence Order of Protection. *See* No. 5:12-cv-129-H (DE-15, Ex. A) (Aug. 17, 2012). Ms. Liverman signed a sworn statement seeking a protective order against Mr. McMillian. *Id.*

Road residence and arresting and detaining Mr. McMillian's on suspicion of armed robbery were malicious and improper. *Id.* at 4-7.

These allegations, however, reprise the allegations in lawsuits these Plaintiffs have already filed in this Court, and which have been dismissed. In 2011, Plaintiffs sued the City of Raleigh and the Raleigh Police Department, alleging that their Constitutional rights were violated by the aforementioned search and arrest. *See McMillian v. City of Raleigh et al.*, No. 5:11-cv-67-BO (DE-1) ("*City of Raleigh*"). These claims were dismissed following frivolity review. *See id.*, Order, DE-5 (E.D.N.C. March. 15, 2011), *aff'd*, No. 11-1417 (4th Cir. Aug. 1, 2011). Undeterred, Plaintiffs filed suit against Detective Parker and Officer Wesco in 2012, again challenging the January 2011 search, arrest, and detention. *See McMillian v. Parker et al.*, No. 5:12-cv-129-H, DE-5 at 2-5 ("*Parker*"). This suit was dismissed pursuant to Fed. R. Civ. P. 41(b) for Mr. McMillian's failure to comply with a court order.[6] *Id.,* Order, DE-18 (E.D.N.C. Mar. 11, 2013). Accordingly, for the reasons discussed below, McMillian's claims against Detective Parker arising out of the January 2011 search of the Parkland Road residence and Plaintiff McMillian's resultant arrest and detention are barred by *res judicata*.

The doctrine of *res judicata* bars a party from bringing an action where such action "has already been litigated to a final judgment by that party . . . and precludes the assertion . . . of any legal theory, cause of action, or defense <u>which could have been asserted in that action</u>." *Ohio Valley Envtl. Coalition v. Aracoma Coal Co.*, 556 F.3d 177, 201 (4th Cir. 2009) (emphasis added; internal citation omitted).[7] *Res judicata* applies where there is (1) a final judgment on the

---

[6] Ms. Liverman's claims in this case were dismissed without prejudice for her failure to both submit an *in forma pauperis* application and sign the complaint. *Id.*, Order, DE-4 at 1 (Jun. 20, 2012).

[7] *Res judicata* applies to civil rights actions brought under Section 1983. *Preiser v. Rodriguez*, 411 U.S. 475, 497 (1973). It is additionally noted that Plaintiff is no stranger to the doctrine or similar bars to duplicative litigation. *See McMillian v. Harrison*, No. 5:11-ct-3181, 2013 WL 40007545, at *6 (E.D.N.C. Aug. 5, 2013) (commenting that

merits in a prior suit; (2) the parties are either identical or in privity in the two cases, (3) the claim in the second matter is based upon the same cause of action in the prior proceeding. *In re Varat Enters., Inc.*, 81 F.3d 1310, 1315 (4th Cir. 1996).

### 1) Final Judgment on the Merits

Plaintiffs' 2012 case against Detective Parker was dismissed pursuant to Fed. R. Civ. P. 41(b). *Parker*, No. 5:12-cv-129-H, DE-18 (E.D.N.C. Mar. 11, 2013). Rule 41(b) allows the court to dismiss a claim in such circumstances, and unless the dismissal order states otherwise – which this Order does not — such a dismissal "operates as an adjudication on the merits." Accordingly, the first element of *res judicata* is satisfied as between the *Parker* case and the current matter. [8]

The first element of *res judicata* is likewise satisfied as to the *City of Raleigh* case. This Court dismissed Mr. McMillian's and Ms. Liverman's complaint following frivolity review for failure to state a claim upon which relief may be granted. Order, *City of Raleigh*, No. 5:11-cv-67-BO (E.D.N.C. Mar.15, 2011) (DE-5), *aff'd*, No. 11-1417 (4th Cir. Aug. 1, 2011). Frivolity review dismissal is not in and of itself a dismissal on the merits, and thus "does not prejudice the filing of a paid complaint making the same allegations." *Denton v. Hernandez*, 504 U.S. 25, 34 (1992). But a dismissal of a claim following frivolity review can "have a *res judicata* effect on frivolousness determinations for future *in forma pauperis* petitions." *Id.* Both this Court and the Fourth Circuit have therefore found that a frivolity review dismissal operates as a "final

---

to the extent plaintiff attempted to re-litigate a claim from a prior lawsuit, it was barred by *res judicata*); Order, *McMillian v. Binford et al.*, 5:12-ct-3035, DE-3 (dismissing complaint as duplicative where it raised "substantially identical claims" and sought "substantially identical relief").

[8] Ms. Liverman's claims were dismissed without prejudice *Id.*, DE-4 at 1. Thus, although the dismissal would constitute a final judgment on the merits as to Plaintiff McMillian, Fed. R. Civ. P. 41(b), this factor would not be met as to Ms. Liverman's claims. As discussed above, Ms. Liverman's claims are frivolous for reasons other than *res judicata*.

judgment on the merits" where a Plaintiff raises the same claims on a subsequent *in forma pauperis* application and complaint. *Hemphill v. Beasley*, 944 F.2d 901, 1991 WL 191370, at *1 (4th Cir. Sept. 30, 1991) (per curiam) (giving frivolity dismissal *res judicata* effect); *Harris v. County of Wake*, No.5:11-ct-3044, 2011 WL 6307824, at *3 (E.D.N.C. Dec. 13, 2011) (same). Accordingly, final judgments on the merits have been entered in Mr. McMillian's lawsuits against Detective Parker as well as the government entity Detective Parker served.

    **2) Identical Parties**

The complaint in *Parker* does not specify whether Detective Parker was named in that suit in his official or in his individual capacity. *See generally Parker*, No. 5:12-cv-129-H, DE-5. "Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. Official-capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). The distinction is relevant here, because *res judicata* does not bar subsequent litigation when a government employee previously sued in his official capacity is sued in his individual capacity. *Andrews v. Daw*, 201 F.3d 521, 526 (4th Cir. 2000); *Brooks v. Arthur*, 626 F.3d 194, 200-201 (4th Cir. 2010). When a Plaintiff does not specify which type of suit he or she wishes to pursue, the court "must examine the nature of the plaintiff's claims, the relief sought, and the course of proceedings." *Biggs v. Meadows*, 66 F.3d 56, 61 (4th Cir. 1995). Factors supporting a personal capacity claim include a plaintiff's failure to allege that the defendant "acted in accordance with a governmental policy or custom," as well as a request for compensatory or punitive damages. *Id.* The *Parker* suit sought monetary damages, and did not allege that Detective Parker was acting in accordance with governmental policy or custom. *Parker*, No. 5:12-cv-129-H, DEs-4&5. Accordingly, it is evident that Detective Parker was previously sued in his individual, not official, capacity.

In the current matter, Plaintiffs explicitly state that they seek compensatory damages from Detective Parker "in both his individual and official capacity." DE-10 at 10. For the reasons discussed above, the second element of *res judicata* is met as to individual capacity claims. Moreover, to the extent that Plaintiffs seek to sue Detective Parker in his official capacity, the "identity of parties" element is likewise met due to Plaintiff's suit against the City of Raleigh. *City of Raleigh*, No. 5:11-cv-67-BO.[9] "Privity exists when a non-party to the earlier litigation is "so identified in interest with a party ... that he represents precisely the same legal right in respect to the subject matter involved." *Martin v. Am. Bancorporation Ret. Plan,* 407 F.2d 643, 651 (4th Cir. 2005) (internal citations and quotation marks omitted). Accordingly, "*res judicata* bars subsequent litigation against . . . officials sued in their official capacity when the [sovereign] has won on the same issue in a previous suit." *Thurston v. United States*, 810 F.2d 438, 444 (4th Cir. 1987); *accord Kayzakian v. Buck*, 865 F.2d 1258, 1988 WL 138438, at *2 (4th Cir. 1988) (unpublished). Thus, Detective Parker is in privity with the City of Raleigh, and Plaintiffs are therefore barred against re-litigating identical official capacity claims against him in this matter. In sum, due to Mr. McMillian's prior suits against Detective Parker and the City of Raleigh, the second element of *res judicata* is met.

**3) Same Cause of Action**

"The test for deciding whether causes of action are identical for claim preclusion purposes is whether the claim presented in the new litigation arises out of the same transaction or series of transactions as the claim resolved by the prior judgment." *Laurel Sand & Gravel, Inc. v. Wilson*, 519 F.3d 156, 162 (4th Cir. 2008) (quoting *Pittson Co. v. United States*, 199 F.3d 694,

---

[9] Although the complaint in *City of Raleigh* was replete with allegations regarding his actions, Officer Parker was not independently named as a Defendant or addressed in the Court's order dismissing the case. *Id.*, DE-1 at 2, 8-9; DE-5.

704 (4th Cir.1999)). Furthermore, "the preclusive effect of a prior judgment extends beyond claims or defenses actually presented in previous litigation, for ... it prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding." *Meekins v. United Transp. Union*, 946 F.2d 1054, 1057 (4th Cir. 1991) (citing *Peugeot Motors of America, Inc. v. Eastern Auto Distrib., Inc.*, 892 F.2d 355, 359 (4th Cir. 1989)).

The prior suit against the City of Raleigh alleged "violation[s] of Plaintiffs' Constitutional rights in the course of conducting a robbery investigation [that] allegedly included a search of [their] residence at 219 Parkland Road in Raleigh, North Carolina, and led, ultimately, to McMillian's arrest on January 16, 2011." *City of Raleigh*, No. 5:11-cv-67-BO, DE-5 at 2; *see also* DE-1 at 8-11. Similar allegations regarding the events of January 2011 were repeated in Plaintiffs' prior lawsuit against Detective Parker. *Parker*, No 5:12-cv-129-H, DE-5 at 2-8 (alleging, *inter alia*, a "misrepresented search" of Ms. Liverman's residence, improprieties in the police line-up, retaliation for Mr. McMillian's lawsuit against other officers, and other events generally challenging McMillian's January 2011 arrest and detention); *see also id.* DE-4 at 3 (discussing allegations).

The only manner in which the present Section 1983 claims against Detective Parker differ from Plaintiffs' prior Section 1983 claims against him is the new theory that Parker's actions were "on behalf of" NC State's admission department "on 'false arrest terms' that included a 'bogus charge of armed robbery.'" DE-10 at 2. That is, Mr. McMillian seems to allege that his arrest was pretextual "for what the liaison to N.C. State really wanted to serve McMillian for: an armed robbery that would guarantee he would not get back into N.C. State … with a dismissed weapons charge North Carolina refuses to expunge based on Plaintiff's past record."

*Id.* at 4. Indeed, Detective Parker is repeatedly referred to as an "N.C. State liaison." *See id.* at 5, 6, & 8 ¶ 20 (suggesting that Plaintiff's arrest was for the purpose of preventing him from re-entering N.C. State to complete his degree). This new theory does not remove Plaintiff McMillian's Section 1983 claims from the scope of *res judicata*: Detective Parker's actions arose out of the same series of transactions that have already been subject of litigation in this court. Whether Mr. McMillian previously espoused this precise allegation regarding Detective Parker's motivation is irrelevant: the preclusive effect of the prior judgments "prevents litigation of all grounds for . . . recovery that were previously available . . . regardless of whether they were asserted." *Meekins*, 946 F. 2d at 1057. Accordingly, the final element of *res judicata* is met as to Plaintiff's Section 1983 claims against Detective Parker.

In sum, *res judicata* bars Plaintiff McMillian's re-litigation of claims against Detective Parker arising out of the January 2011 Parkland Road search and Plaintiff's subsequent arrest and detention. It is therefore RECOMMENDED that Plaintiff McMillian's Section 1983 claims against Detective Parker be dismissed. *See, e.g.*, *Aloe Creme Labs., Inc. v. Francine Co.*, 425 F.2d 1295, 1296 (5th Cir. 1970) ("The District Court … had no duty to grind the same corn a second time. Once was sufficient.").

### C. Plaintiff McMillian's Section 1985 Claim

Read liberally, Plaintiff's complaint appears to allege not only Section 1983 claims but also a claim that N.C. State admissions officers and Detective Parker conspired to arrest McMillian on trumped up charges with the goal of keeping him out of the University. "[T]o establish a sufficient cause of action for 'conspiracy to deny equal protection of the laws' under section 1985(3), a plaintiff must prove: (1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the

plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy." *Simmons v. Poe*, 47 F.3d 1370, 1376 (4th Cir. 1995). Simply put, the complaint is devoid of factual allegations supporting such a claim. Plaintiff has not, for instance, alleged any "specific class-based" animus: he simultaneously contends that he was denied admission due to his criminal history and that N.C. State persuaded a member of the police force to arrest Mr. McMillian for a violent crime in order to give them a reason to deny him admission. Mr. McMillian does not, however, allege that N.C. State was motivated by his criminal history in engaging in the purported conspiracy. Mr. McMillian's Section 1985 claim is "fanciful" and the contentions on this point in the complaint are "clearly baseless." *Denton*, 504 U.S. at 32-33. As such, it is RECOMMENDED that any Section 1985 claim alleged against Defendants be dismissed.[10]

### D. Plaintiff McMillian's Claim against Family Court Judge Bousman

Judge Bousman is not named in the caption of Plaintiffs' complaint, yet Mr. McMillian accuses her of "gross negligence," DE-10 at 4, for entering a protective order against him and seeks damages as recompense. DE-10 at 9. Plaintiff's claim in this regard is legally meritless. *See In re Mills*, 287 F. App'x 273, 279 (4th Cir. 2008). "Judges performing judicial acts within their jurisdiction are entitled to absolute immunity from civil liability claims." *Id.*; *see also Dalenko v. Stephens*, 917 F. Supp. 2d 535, 549-50 (E.D.N.C. 2013). As such, it is RECOMMENDED that Plaintiff McMillian's claim—if any—against Judge Bousman be dismissed.

---

[10] Even if this claim were to survive as to the N.C. State defendants, it is arguable that such a claim against Detective Parker could have been brought in Plaintiff's prior lawsuits and would therefore be barred by *res judicata*. *See City of Raleigh*, 5:11-cv-67-BO, DE-1 at 11 ("[B]ecause of the nature of the [armed robbery] charge, I cannot return to N.C. State University and I need exp[u]ngement.")

### E. Plaintiff McMillian's Section 1983 Claim Against N.C. State and Admissions Officials

The precise targets of Mr. McMillian's claims against N.C. State are unclear. He names "Paul Cousins" and "Dr. Hunt N.C. State University" in the complaint, but ultimately seeks an injunction against N.C. State itself. DE-10 at 1, 8-9. Because Mr. McMillian appears to challenge N.C. State policy in addition to the denial of his application for readmission, the undersigned will assume that Mr. McMillian intends to sue both institutional and individual defendants. *See Erickson*, 551 U.S. at 94 (*pro se* complaints should be construed liberally). Mr. McMillian alleges that, in seeking readmission to N.C. State, he discussed his prior charges with Dr. Hunt. *Id.* at 8, ¶ 21. Dr. Hunt then allegedly made a remark regarding the length of time since Plaintiff had attended school, and recommended that Plaintiff try applying to Shaw University. *Id.* at 8, ¶¶ 22-23. According to Plaintiff, John Ambrose, an undergraduate Dean at N.C. State, "recommended to both Dr. Hunt and Paul Cousins that McMillian be readmitted back into the college based on merit and based on the fact that any and all pending or past gun charges had been dropped." *Id.* at 8, ¶ 24. Nonetheless, McMillian's application was rejected[11] with "no clear or dated reason," and he contends he was "criminally profiled . . . with malicious and extreme prejudice considering McMillian's academic standings and grand potential to finish studies at N.C. State University." *Id.* at 8-9, ¶ 25. In his prayer for relief, McMillian seeks to enjoin N.C. State from:

> denying admissions to McMillian and students who do not have violate [*sic*] weapons charges on their criminal records or based on crimes dismissed by the courts or that were not committed on campus or during the times in which they were attending college 'only if such crimes be

---

[11] Mr. McMillian attaches to his original complaint an unsigned, undated, and apparently incomplete letter purportedly from the "Admissions Background Review and Investigation Committee," informing him that his application for readmission had been denied. DE-1-3.

drug related' in the eyes of the law. Otherwise, a student should have the right to return to N.C. State University after paying societal debts for crimes that do not involve guns or did not involve monies distributed by financial aide [*sic*] at the commissions of such crimes.

*Id.* at 9, ¶ 27. Plaintiff also seeks his own readmission into the university. *Id.* at 9, ¶ 28.

Read liberally, Plaintiff's complaint appears to allege that the denial of his re-admission was arbitrary and unreasonable, and that Dr. Hunt and Mr. Cousins rejected his application with "malicious and extreme prejudice." *See Davis v. Southeastern Community College*, 424 F. Supp. 1341, 1344 (E.D.N.C. 1976) ("The admission to a state . . . college is a privilege and not by itself a constitutional or property right, subject to the exception that the rules and regulations for admission are not arbitrary or unreasonable."); *cf. C&H Co. v. Richardson*, 78 F. App'x 894, 901 (4th Cir. 2003) (discussing "class of one" equal protection challenges, wherein a plaintiff alleges that he has been treated differently from similarly situated individuals, without a rational basis for the difference in treatment). In addition, Plaintiff likewise appears to allege that N.C. State has a policy against admitting students with criminal records, and that this policy violates equal protection principles. *See Grutter v. Bollinger*, 539 U.S. 306, 328 (2003) (discussing the "tradition of giving a degree of deference to a university's academic decisions, within constitutionally prescribed limits"); *see generally* Darby Dickerson, *Background Checks in the University Admissions Process*, 34 J.C. & U.L. 419, 455-56 (2008) (discussing legal and constitutional limitations on university background check policies).

These allegations, while thin, are nevertheless sufficient to withstand frivolity review. *Cf. Wright v. Speece*, No. 08-cv-4784, 2009 WL 1383282, at *2 (E.D. Pa. May 14, 2009) (case proceeded to summary judgment where *pro se* plaintiff claimed racial discrimination in conditions placed upon his admission due to his criminal history and Director of Student Affairs told him to apply to an "urban school" instead). Construing these allegations liberally and

weighing all facts in Mr. McMillian's favor, the undersigned concludes that his Section 1983 claim against N.C. State and its admissions officials is neither "wholly irrational" nor "incredible." *Denton*, 504 U.S. at 33; *see also Green v. Maroules*, 211 F. App'x 159, 162 (4th Cir. 2006) (a *pro se* complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no facts . . . which would entitle him to relief). As such, it is RECOMMENDED that Plaintiff McMillian's Section 1983 claim against N.C. State and its admissions officials be allowed to proceed.

It is RECOMMENDED, however, that Plaintiff McMillian's request for a preliminary injunction against N.C. State, DE-10 at 9, be DENIED. A party seeking a preliminary injunction must demonstrate: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm; (3) that "the balance of hardships tips in their favor"; and (4) that the injunction is in the public interest. *Metropolitan Regional Info. Sys., Inc. v. Amer. Home Realty Network, Inc.*, 722 F.3d 591, 595 (4th Cir. 2013) (citing *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). As Mr. McMillian has not demonstrated a likelihood of success on the merits, it is unnecessary to address the remaining factors. *See Burgos v. University of Central Florida Board of Trustees*, 283 F. Supp. 2d 1268 (M.D. Fla. 2003) (denying preliminary injunction sought by student seeking immediate admission where university delayed his admission until his probation was completed).

### F. Conclusion

For the foregoing reasons, this Court RECOMMENDS that: (1) Plaintiff Liverman's claims be dismissed; (2) Plaintiff McMillian's § 1983 claim against Detective Parker be dismissed; (3) Plaintiff McMillian's § 1985 claim against Detective Parker, Mr. Cousins, and Dr. Hunt be dismissed; (4) Plaintiff McMillian's against Judge Bousman be dismissed; (5) Plaintiff McMillian's Section 1983 claim against N.C. State and its admissions officers be allowed to

proceed; and (6) Plaintiff McMillian's request for a preliminary injunction against N.C. State be denied.

### III. Motion to Appoint Counsel (DE-12)

As to Plaintiffs' motion for appointment of counsel, there is no constitutional right to counsel in civil cases absent "exceptional" circumstances. *Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975). Exceptional circumstances exist where "a *pro se* litigant has a colorable claim but lacks the capacity to present it." *Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984) (citation omitted) (holding that 28 U.S.C. § 1915 does not authorize compulsory appointment of counsel), *abrogated on other grounds by Mallard v. U.S. Dist. Ct.*, 490 U.S. 296, 298 (1989). Whether "exceptional circumstances" exist which warrant the appointment of counsel depends on two factors: "the type and complexity of the case, and the abilities of the individuals bringing it." *Id.* No exceptional circumstances have been presented by Plaintiffs in this case. Mr. McMillian has demonstrated his capacity to adequately present claims of this nature in his many court filings, and it is therefore RECOMMENDED that Plaintiffs' motion to appoint counsel (DE-12) be DENIED.

### IV. Pre-filing Injunction

As a final matter, this Court has expended considerable time and effort reviewing not only Plaintiffs' pleadings in this matter but also the other twenty-plus duplicative cases Mr. McMillian has filed. Because of Mr. McMillian's proclivity for filing frivolous lawsuits, many of which are only slight iterations of previously raised claims, the undersigned would recommend the entry of a

pre-filing injunction standing order with regard to Mr. McMillian, at least with respect to his January 2011 search, arrest, and detention.[12] *See, e.g.,* http://www.nced.circ4.dcn/html/prefilinginjunctions.html.

## CONCLUSION

For the foregoing reasons, it is RECOMMENDED that:

1. Plaintiff Liverman's application to proceed *in forma pauperis* (DE-6) be GRANTED;

2. Plaintiff McMillian's application to proceed *in forma pauperis* (DE-8) be GRANTED;

3. Plaintiffs' Motion to Amend Complaint and Substitute Party (DE-10) be GRANTED;

4. Plaintiff McMillian be added as a party, and that the U.S. Courts, Jails, and Prisons Coalition be dropped;

5. Plaintiffs' "Motion to Proceed *Pro Se* as an Indigent Party" (DE-11) be DENIED AS MOOT;

6. Plaintiffs' motion to appoint counsel (DE-12) be DENIED;

7. Plaintiff Liverman's claims be DISMISSED;

8. Plaintiff McMillian's § 1983 claim against Detective Parker be DISMISSED;

9. Plaintiff McMillian's § 1985 claim against Detective Parker, Mr. Cousins, and Dr. Hunt be DISMISSED;

10. Plaintiff McMillian's claim against Judge Bousman be DISMISSED;

11. Plaintiff McMillian's Section 1983 claim against N.C. State and its admissions officers be ALLOWED to proceed;

12. Plaintiff McMillian's request for a preliminary injunction against N.C. State be DENIED; and

13. This Court should consider the entry of a pre-filing injunction standing order against Plaintiff McMillian.

SO RECOMMENDED in Chambers at Raleigh, North Carolina on December 12, 2013.

_____
WILLIAM A. WEBB
UNITED STATES MAGISTRATE JUDGE

---

[12] It is noted that Mr. McMillian has also filed repetitive litigation challenging the adequacy of prison food. *See, e.g.*, No. 5:13-ct-3259-D, No. 5:11-ct-3183-FL, No. 5:10-ct-3037-FL.